## CRAWFORD *v.* THE WELLS CITY.[1]

*(District Court, E. D. New York.* February 8, 1889.)

**1. MASTER AND SERVANT—INJURY TO STEVEDORE—NEGLIGENCE—LIABILITY OF VESSEL.**
    Libelant was engaged in trimming grain under the hatch in the hold of a vessel, when seamen placed the hatch-cover on. Libelant stood aside while the cover was being put on, but afterwards resumed work on the mate's order. Two of the seamen then attempted to spring the hatch-covers together, when one cover, which was greasy, slipped, and fell upon the libelant, causing injuries for which this suit was brought. *Held,* that the vessel was liable for libelant's damage.

**2. SAME—FELLOW-SERVANT—GRAIN-TRIMMER AND SAILOR.**
    A grain-trimmer, employed by a contractor to assist in trimming the grain with which a vessel is being loaded, is not the fellow-servant of a sailor on the ship.[2]

In Admiralty.
Action for personal injuries received by libelant, while engaged in trimming grain in the hold of the steam-ship Wells City, through the falling upon him of one of the ship's hatch-covers.

*John I. Allen,* for libelant.

*E. B. Convers,* for the steam-ship.

BENEDICT, J. This action is brought to recover damages for injuries received by the libelant while he was engaged in trimming grain in the hold of the steam-ship Wells City, through the falling upon him of one of the ship's hatch-covers. The libelant was a grain-trimmer, employed by a contractor to work in trimming the cargo of grain then being loaded on board the steam-ship. At the time of the accident the trimming was finished all but leveling off the grain under the hatch. The spout had been removed, and, as it was raining hard, the mate of the ship directed three of the crew to put on the hatch-covers. The mate was at the time in the hold with the libelant. When the placing of the covers in position was commenced, warning seems to have been given to the men in the hold, and they stepped out from under the hatch in order to be out of danger. While they were out of the hatch, the covers were all put in position, and thereby the hold was so darkened as to indicate to persons below that the covers were in place. Accordingly the mate motioned the libelant that it was time for him to resume work, and the libelant, with others, thereupon stepped back into the hatch, to conclude his work of trimming the grain in the hatchway. After the men had stepped back under the hatch, however, two of the sailors undertook to spring two of the hatch-covers together; the covers having failed to go home when laid down. In doing this, one of the men lifted one of the

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

[2] As to who are fellow-servants within the rule exempting the master from liability to one, for injuries caused by the negligence of another, see Railway Co. v. Welch, (Tex.) 10 S. W. Rep. 529, and note; Sullivan v. Railroad Co., (N. Y.) 20 N, E. Rep. 569, and note; Wolcott v. Studebaker, 34 Fed. Rep. 8, and note.

covers, and the other lifted the other, and placed their edges together. Each cover weighed about 70 pounds, and they were very greasy at the time, owing to the dampened dust arising from the grain.    While the covers were thus being sprung together, one of them slipped, and fell into the hold below, striking the libelant, and causing the injuries for which he now sues.

Several points are made on the part of the defense.    One is that the libelant was at the time of the accident the servant of the claimant, engaged in a common employment with the sailors who undertook to place the cover in position, and therefore cannot recover for negligence of a fellow-servant.    Upon this point my opinion is that the relation of fellow-servant did not exist between the libelant and the mate who directed the placing of the covers, or between the libelant and the seamen who were engaged in handling the covers at the time the cover fell.

Next, it is contended that the libelant's injuries are attributable to his own carelessness, because he resumed work under the hatch before the adjustment of the hatch-covers was completed.    But when the hatch-covers were placed in position so as to exclude the light from those below, the libelant, in absence of notice to the contrary, was entitled to assume that the adjustment of the hatch-covers had been completed, and especially so when the mate who had directed the placing of the hatch-covers indicated to him that it was time for him to resume his work in the hatch.    In my opinion, the libelant was not guilty of negligence in being under the hatch under the circumstances.

Third, it is contended on the part of the claimant that it is not shown that the falling of the hatch was caused by negligence.    Upon this point my opinion is also adverse to the claimant.    The evidence, as I understand it, shows negligence in the performance of the ship's work of putting on the hatch-covers.    The negligence consisted in attempting to handle the cover by a single man, instead of by two.    The cover was greasy, and liable to slip, and in case of any slip it would be impossible for a single man to hold it, weighing, as it did, some 70 pounds.    It was, in my opinion, negligence for a single man to attempt to handle the cover while springing it home under such circumstances, and especially was it negligence to do so without warning to the men in the hatch, after the covers had been once laid down in such a position as to indicate to the men below that the covers were in place.    The libelant, instead of being warned, was, in legal effect, notified by the mate that the covers were in place.    Under such circumstances, I think it must be held that negligence on the part of the ship has been shown, and under the principles stated in the case of *The Kate Cann*, 2 Fed. Rep. 241, affirmed by the circuit court, 8 Fed. Rep. 719, the libelant is entitled to recover his damages of the vessel herself.    Let there be a decree in favor of the libelant, with a reference to ascertain the amount of the damages sustained.