### THE FALCO.

Circuit Court of Appeals, Second Circuit.
June 6, 1927.

No. 271.

**1. Admiralty ☜⟹5—Whether to take jurisdiction of controversy involving foreign vessel's liability to alien seaman for injuries rested in District Court's discretion.**

Question of whether District Court should take jurisdiction of controversy involving liability of foreign vessel to alien member of crew for injuries received while employed as seaman and arising out of his contract lay in its discretion.

**2. Seamen ☜⟹2—Person employed or engaged to serve in some capacity on board ship was "member of crew" (Comp. St. §§ 8300, 8392).**

Under Rev. St. § 4612 (Comp. St. § 8392), person employed or engaged to serve in some capacity on board ship constituted a member of the crew, notwithstanding that he had not signed articles, which was necessary under Rev. St. § 4511 (Comp. St. § 8300), only when vessel is on voyage, since such failure did not qualify incidents of service, or define its character while he remained at work.

**3. Admiralty ☜⟹5—Disputes arising out of seaman's employment are normally referred to tribunals of flag, but admiralty court will satisfy itself that he will not be without remedy.**

Normally disputes arising out of seaman's employment are referred to tribunals of the flag, yet courts of admiralty, before turning seaman out of court, will satisfy themselves that there are no special circumstances which will leave him without adequate remedy.

**4. Courts ⬤11—Reason must be shown for court's abdication in disputes of suitors over whom it has jurisdiction.**

Courts are primarily established to decide the disputes of all suitors over whom they have jurisdiction, and some reason must be shown for abdication.

**5. Admiralty ⬤5—District Court properly declined jurisdiction of suit by alien seaman against foreign vessel for injuries resulting from falling through unlighted coal hatch (Jones Act [41 Stat. 988]).**

Where libel by alien seaman against foreign vessel for injuries resulting from falling into unlighted coal hatch, though apparently stating case under Jones Act (41 Stat. 988), showed on its face that libelant had no rights to lose, in that liability did not rest on unseaworthiness, District Court properly declined to assume jurisdiction.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in admiralty by Joao M. Braga against the Steamship Falco. Decree of dismissal (15 F.[2d] 604), and libelant appeals. Affirmed.

Braga, the libelant, a Brazilian, filed a libel and arrested the Swedish steamer Falco, then lying in the port of New York. The libel alleged that he was a "seaman on board said vessel at wages $67.50 per month," "was employed" on the vessel, and "engaged, in obedience to orders, in chipping certain pipes between decks." While at work the head of his hammer flew off, and in seeking it he fell into an open and unlighted coal hatch and was injured. He asked damages because the place given him to work was unsafe and the ship unseaworthy.

The owner of the ship, a Swedish corporation, appeared and moved to dismiss the libel, because it involved a controversy between a foreign ship and an alien seaman, over which the District Court should not take jurisdiction. Braga's answering affidavit showed that he was employed in the port of New York, where he resided, as "an able-bodied seaman" on the Falco, and was doing work as such, but that he had not yet signed the articles. The vessel was to sail in a week and he was meanwhile receiving port pay. He worked eight hours a day, went home to sleep, and "was free to join the ship as a member of the crew, or not, at his election, when the time came for the ship to commence her voyage." The Swedish consul general filed an affidavit in support of the motion, asking that the District Court decline jurisdiction, and alleging that under the Swedish law Braga was entitled as his only remedy to workmen's compensation, which he could receive through the affiant, and need not go to Sweden to get.

The District Judge held as matter of discretion that he should not entertain the suit, and dismissed the libel. The libelant appealed.

Simone N. Gazan, of New York City, for libelant.

Haight, Smith, Griffin & Deming and Wharton Poor, all of New York City (James McKown, Jr., of New York City, on the brief), for claimant.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). [1] If Braga was a member of the Falco's crew, though himself not a Swede, the question whether the District Court should take jurisdiction over the cause lay in its discretion. The Belgenland, 114 U. S. 355, 5 S. Ct. 860, 29 L. Ed. 152. The controversy involved the liability of the Falco to him arising out of his contract of employment, whether the suit sounds in contract or in tort. The Hanna Nielson, 273 F. 171 (C. C. A. 2). If that article of the Swedish treaty of 1910 were still in force which formerly controlled the situation, we do not say that any discretion would have existed; but it has been abrogated by mutual consent, and the customary law alone remains.

[2] That he was a member of the crew seems to us proved. He calls himself a seaman, and indeed, since he was "employed or engaged to serve" in some "capacity on board ship," our statutes make him such. R. S. § 4612 (Comp. St. § 8392); Pac. Mail S. S. Co. v. Schmidt, 214 F. 513 (C. C. A. 9). The ship was in commission, and he an A. B., working as such. The fact that he had not signed the articles, which are in any case necessary only when she is on a voyage, R. S. § 4511 (Comp. St. § 8300), might affect the duration of his service and his right to throw up his job, but did not qualify its incidents, or define its character, while he remained at work, Jansen v. The Theodor Heinrich, Fed. Cas. No. 7215; Clark v. Montezuma Transp. Co., 217 App. Div. 172, 216 N. Y. S. 295. A ship may have a crew in port, and he had engaged to serve her in strictly maritime duties, as much while at her berth as after she broke ground, when he expected still to be in her service.

[3, 4] Normally disputes arising out of a seaman's employment are referred to the tribunals of the flag. The Ester (D. C.) 190 F. 216. Nevertheless, courts of admiralty, which are sensitive to a seaman's rights, or at least

have always professed to be, will in such cases, before turning him out of court, satisfy themselves that there are no special circumstances which will leave him without adequate remedy. The Becherdass Ambaidass, Fed. Cas. No. 1,203; Willendson v. Forsoket, Fed. Cas. No. 17,682; The St. Oloff, Fed. Cas. No. 17,357; The Topsy (D. C.) 44 F. 631; The Sirius (D. C.) 47 F. 825; The Ester (D. C.) 190 F. 216. Even the protest of a consul is not conclusive, when justice requires the court to entertain the plea. The Lilian M. Vigus, Fed. Cas. No. 8,346. Moreover, the discretion of the instance court must be exercised with a due regard to the circumstances, and we are required to examine the grounds of its decision, before we accept its conclusion. Courts are primarily established to decide the disputes of all suitors over whom they have jurisdiction, and some reason must be shown for their abdication.

If Braga had had any right under the law of the sea, and had been so injured that he could not have gone on the voyage, or had his rights been such that only an American court could have given him any remedy, we will not say that his libel would not have lain. It states a case apparently under the Jones Act (41 Stat. 988); but, being in rem, it was not good in law under a very recent decision of this court. The Pinar Del Rio, 16 F. (2d) 984. This we say, reserving the question whether the Jones Act applies to foreign ships at all. If the suit lies, it must therefore be under the general maritime law (The Osceola, 189 U. S. 158, 23 S. Ct. 483, 47 L. Ed. 760), and then only because the ship was unseaworthy.

[5] The only defect alleged, which can be said to have caused his injuries, is that the covers of a coal hatch were left off while the Falco was in port. Whatever might have been her liability to a landsman under such circumstances (The Helios [D. C.] 12 F. 732; The Guillermo [D. C.] 26 F. 921; The Protos [C. C.] 48 F. 919), it does not rest upon unseaworthiness. In this respect the case at bar differs from Heredia v. Davies, 12 F. (2d) 500 (C. C. A. 4), where a companionway was defective. To leave off the covers of a coal hatch may create some liability also in favor of a seaman, but, if so, it arises because of the neglect of the crew in the discharge of their duties; it is not a defect in seaworthiness, and under the maritime law no liability arises from it.

We have not, therefore, to consider whether Braga, a Brazilian, in case his injuries made him incapable of going upon the voyage, would by the Falco's departure have been de-

prived of any remedy against her under the law of the sea. Nor have we to consider whether, after engaging as a member of her crew, the law of Sweden alone applied to the situation, under which his rights were limited to workmen's compensation. On his own showing he had no rights to lose; at least none that he could pursue in the suit which he filed. We think, therefore, that the District Judge was right in declining to assume jurisdiction. No especial circumstances existed which in justice required him to do so.

Decree affirmed.