## DECKER v. SMITH.

(District Court, N. D. New York. June 4, 1912.)

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—NURSING BOTTLE.

The Decker patents, No. 521,773, for a nursing bottle, and No. 587,939, for an improvement thereon, were not anticipated, and both disclose patentable invention, although not of broad character; also, *held* infringed.

In Equity. Suit by William M. Decker, doing business as the Hygeia Nursing Bottle Company, against De Wane B. Smith, doing business under the name of the Yankee Company. On final hearing. Decree for complainant.

Suit to restrain alleged infringement of claims 1 and 3 of United States letters patent No. 521,773, dated June 19, 1894, to William M. Decker for "nursing bottle," and alleged infringement of the sole claim of United States letters patent No. 587,939, dated August 10, 1897, to said Decker, for "nursing nipple," and for an accounting.

J. William Ellis, of Buffalo, N. Y., for complainant.
Martin & Jones, of Utica, N. Y., for defendant.

RAY, District Judge. The claims of the patents in suit relate to nursing bottles—receptacles for milk or liquid food to be fed to infants. The claims in issue of letters patent No. 521,773, dated June 19, 1894, read as follows:

"1. A nursing device consisting of a cell or receptacle, having substantially an uncontracted and open upper portion closed by an elastic breast of dome-shaped form, terminating at its apex in a perforated nipple, substantially as and for the purposes set forth. * * *

"3. As a new article of manufacture a cover for a nursing cell or food receptacle, consisting of an elastic dome-shaped breast open at its base and adapted to embrace the cell, and terminated near its upper portion, and made integral with a perforated nipple, substantially as and for the purpose set forth."

The sole claim of letters patent No. 587,939, dated August 10, 1897, reads as follows:

"As a new article of manufacture an elastic breast $A$ and nipple $C$ for nursing cells, having a reinforced zone $D$, substantially as and for the purposes set forth."

In describing his nursing bottle (No. 521,773), the patentee says:

"My invention relates to improvements in bottles or like receptacles, used to contain liquid food that is to be fed to infants, and that are adapted to permit the gradual removal of such food by the child in the act of sucking a mouthpiece that is connected with the bottle.

"Nursing devices may be said to involve generally two species: First, those with tubes entering the receptacle or cell; and, second, those known as gravity devices. In the first species the receptacle is emptied entirely by suction, while in the second the receptacle is emptied by the gravitation of the fluids to the nipple.

"My invention relates especially to the gravity species, and has for its object to facilitate the gravitation of the fluid without obstruction, and consists of a cell or receptacle constructed without breast or neck, and closed

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by an elastic cover constituting an integral breast and nipple, substantially similar to a mother's breast and nipple. As a result of this construction, the receptacle as well as its cover are capable of ready and perfect cleansing, which is an all-important consideration in administering artificial food to infants, and another result is the ready flow of the fluids by gravity into the breast and nipple without necessitating the undue elevation of the receptacle and also the avoidance of collapse of the nipple as the result of suction.

"A further advantageous result of my invention consists in the fact that the infant is restricted to a natural hold on the nipple, and it can only enter the mouth to a limited extent, and not so far as to gag or choke the child, but to a sufficient distance to avoid ingestion of food by restricting its discharge to the tongue and not beyond the tongue and into the throat, as occurs in the use of receptacles which may be forced into the mouth."

The patent of June 19, 1894, No. 521,773, has, 1, the receptacle for the food which may be cylindrical, or elliptical with rounded corners inside and out to avoid injuring the child and to facilitate cleansing. It is of the same, or substantially the same, dimensions from top to bottom, and must be large enough to permit the insertion of the fingers for cleansing the receptacle, and has an outwardly projecting flange at the top to aid in retaining the breast portion thereon. There is nothing new or novel in such a receptacle for nursing bottles. See patent to John E. Potter, February 17, 1880, No. 224,557, for "nursing bottle," and patent to Martin Vessel, October 4, 1887, No. 371,-005, also for "nursing bottle." This nursing bottle has, 2, an elastic breast of dome-shaped form open at its base, which breast terminates at its apex in a perforated nipple, and this breast portion clasps the flange on the receptacle and closes the same.

The first claim is for the combination of receptacle and breast portion. The second claim is for the cover or breast portion as a new article of manufacture.

The simplicity of this nursing bottle almost repels the idea of patentable invention, and would, to my mind, were it not for the fact that the prior art discloses so many comparatively complex devices for nursing bottles, which the Decker device has superseded, that I am led to the conclusion that something more than mechanical ingenuity and more than the skill of a mechanic skilled in the art was involved in the production of the Decker nursing bottle as a whole. The defendant has also copied this form of a nursing bottle, including receptacle and dome-shaped breast portion, which is some evidence of the superiority of the Decker bottle. Turned on its side, the fluid contents flows and presses into the breast portion and nipple and out through the perforation in the nipple. There is no tube connected with the nipple or breast portion or used at all, and the nipple and breast portion are integral. In the Ware patent of 1888, the nipple clasps the flange on the narrow-necked bottle, but is connected with a tube and is somewhat complex in its construction. The Kennish patent of 1876 has the tube and the complex construction going with it. These tube constructions are difficult to cleanse properly and add to the danger of the nursing bottle arising from want of proper cleansing. The nipple is attached to the tube, instead of being integral with the breast portion, which closes the receptacle, and the

tube and nipple pass through an opening in this breast portion. This breast portion of rubber embraces a flange on the "wide" neck of the receptacle. This cover, which is the breast portion, is, says the patent, "to provide for an instinct of the infant to press the cheek against a soft elastic substance"; and, again, "This cover is designed to supply to the infant the feeling of the natural mammary gland." There was nothing new in Decker in providing a breast portion of dome shape, as this is shown in the Kennish patent just described. However, the nipple and breast portion are not made integral. However, "Davidson's nipples," shown, but not described, in "W. H. Schieffelin & Co., General Prices Current New York, 1891," show a nipple with a small dome-shaped breast portion integral with it (see page 464, Nipple "No. 22 or 26 small; No. 33 or 37 large"), and adapted to clasp a flange on a nursing bottle receptacle. Enlarge this breast portion in construction and attach it to the food receptacle of the J. E. Potter patent of 1880, No. 224,557, and we would have in substance the Decker construction of his patent No. 521,773, of June 19, 1894.

In the patent of October 4, 1887, to Martin Vessel, No. 371,005, we find a receptacle of cylindrical form having an approximately hemispherical lower end with flattened base and a rounded top which evidently screws on. This dispenses with all sharp angles, and, if made of suitable size, permits the insertion of the fingers for cleansing purposes. This receptacle has a branch on the side to which is attached the nipple, but there is no breast portion. The breast portion in the side makes the cleansing of that part somewhat difficult.

It seems to me very clear that by taking the receptacle, say, of the Potter patent of February 17, 1880, No. 224,557, and combining it with the nipple shown, page 464, No. 22 or 26 small, No. 33 or 37 large, of W. H. Schieffelin & Co., General Prices Current, 1891, enlarged, except that the nipple proper must not be enlarged in the same proportion that we enlarge the breast portion, and we would have, substantially, the combination of the Decker patent in suit, No. 521,-773, of June 19, 1894. However, prior to Decker no such enlargement and combination had been made. It presents to my mind the simple proposition whether Decker did more than a mechanic skilled in the art would have done; that is, did his changes and improvements and simplifications of the nursing bottle in the nursing bottle art rise to the dignity of invention? Decker starts with the presumption of validity in his favor, and the trouble he had in securing the patent in the Patent Office shows it was thoroughly considered there. His application was rejected until it came to the Board of Examiners in Chief, where it was upheld. That board said there were two points of essential novelty as well as of great hygienic importance, pointing them out, and then added:

"The examiner appears finally to concede the novelty of the device but to deny or ignore its importance. He says it is but a matter of degree, but positive differences of construction, such as those shown and claimed, designed with reference to improvement in function as well as hygienic considerations, cannot be dismissed on such a ground. We find novelty, utility, and patentability in the improvements claimed."

These patents were before me on a motion for preliminary injunction which was granted. The first patent was before Judge Kohlsaat, Eastern Division, Northern District of Illinois, in Decker, etc., v. Western Bottle Manufacturing Co. (C. C.) 193 Fed. 415, and he held the patent valid and infringed. The judge considered the prior art, and, amongst other things, said:

"The opinion of the experts is conflicting as to Decker's utility over the prior art. Defendant, however, concedes its utility by infringing it.

"With regard to the combination of claim 1, the record discloses no anticipating nursing bottle. It is unique in the art.

"The child-feeding art is one that appeals to a great majority of the public. Every little convenience is seized. The fact that there is no bottle like Decker's found in the prior art stands for something. True, there seems to be little inventive genius displayed in the device, but if it is a useful and desirable article, as defendant must be held to concede, then why was it so long in materializing? The desirableness of a gravity feed bottle, which defendant stands also conceding, seems to have been slow in making itself felt. Decker has emphasized it by his device. The line between mechanical skill and invention may not be definitely defined; but, in this art, at least, it may safely be located so as to regard him who gives the baby any small degree of improved chance for life over existing means for guarding itself against ills growing out of deficient material attentions whenever there is deducible, even a spark of invention.

"With regard to the device of claim 3, there is no anticipation unless it may be found in Kennish's nipple, which much resembles it. The fact that it is composed of one piece, instead of two, should not determine the matter. Kennish gives as one of his objects 'to provide for an instinct of the infant to press the cheek against a soft elastic substance.' The nipple is of rubber. Its lower portion or neck passes through a central opening in the rubber cover, which is dome shaped, and is drawn over or otherwise connected with a coupling 𝐸 made of bone, wood, or other suitable substance. This coupling extends upward into the neck of the nipple to a point above the cover or dome and downward into a rubber tube which connects it with a glass tube, thereby uniting the nipple with the glass tube. Thus, while the outer appearance of the two nipples and dome devices is very similar, it is apparent that the concept of the two is dissimilar. As with the combination of claim 1, the departure here from the prior art is slight but important. The nipple lends itself to use in connection with a gravity device. It is rather a breast than a nipple. There seems to be sufficient novelty to constitute invention, humble, but useful and distinct."

The Circuit Court of Appeals in this, the Second, circuit, has quite generally placed stress on the fact that the alleged infringer has copied the device of the patent alleged to have been infringed and also long acquiescence in its validity by not infringing. This is a sort of admission by the trade and competitors that the patent is valid.

As to the patent of August 10, 1897, No. 587,939, I think it an improvement over the prior art and patentable. Decker, the patentee, refers to the device of his prior patent, which we have been considering, and points out its defect, viz.:

"From practical experience in the use of said device I have discovered that the breast portion of the cover has a tendency to sink or draw down into the cell or receptacle and also to collapse laterally as a result of suction, and the nipple portion consequently has a tendency to likewise sink bodily and turn over laterally. The object of my present invention is to overcome this disadvantage and to provide a cover which, while it shall be readily adjustable over the cell, will permit of lateral and rotary motion both of the breast and nipple portions of the device; and with these ends

in view my invention consists of a combined breast and nipple made integral and having a reinforce below the nipple, as will be hereinafter more fully described." .

This reinforce is really a stiffening of the breast portion below the nipple in such a way as to obviate or do away with the defects of the prior patent as pointed out and has utility and novelty in the art, and while it seems and is a simple improvement, it is effectual and had not occurred to others. In view of the importance of nursing devices to the human race, especially sanitary considerations, including simplicity, cheapness, and effectiveness, I think this discloses patentable invention. Mere enlargement of the old nipple would not have constituted invention. Here we have enlargement with a change of proportion or construction and added functions, to which is added utility such as to commend it to the general public and make it a commercial success. I am constrained, therefore, within the authorities, to hold the claims in issue of both patents valid. I do not see that infringement can be denied.

There is a motion pending to punish the defendant for contempt; the claim being that he violated the preliminary injunction by continuing to make and vend an infringing article. I am compelled, on account of the narrow range or scope of the invention, to deny this motion. In no sense were the Decker patents pioneers. The devices claimed were mere improvements, and, when the preliminary injunction was granted, I refused to embrace all the defendant's constructions. I think he obeyed in letter and in spirit. He had already abandoned the advertising features of his infringement, and I do not find that he repeated this, or that he made or sold a device after the preliminary injunction was granted which comes within the narrow claims of the patent as construed by the Patent Office, Judge Kohlsaat, or by this court. The breast portion as made and vended after that date is not covered by the patent, and, in view of this prior art and narrow construction given the patents in suit, is one he had the right to make and vend. There is a conflict of expert evidence on this subject, and, as I have heretofore stated in considering the subject, the dividing line between infringement and noninfringement is a narrow one. But I cannot strain a point to make defendant an infringer and guilty of contempt of court, when those skilled in the art honestly differ on the questions, and I am not satisfied that the device referred to was prohibited by the injunction.

The complainant is entitled to a decree accordingly and for an accounting and for costs.